NOT FOR PUBLICATION

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

_____
                            :
VANZ, LLC,                      :
                            :    Civil Action No. 13-1392 (SDW) (MCA)
       Plaintiff,          :
                            :    **OPINION**
                            :
v.                           :
                            :
MATTIA & ASSOCIATES, GEORGE  :
MATTIA, CRAIG M. GEISLER, ABC,  :
INC., XYZ, LLC,             :
                            :
       Defendants.        :
_____ :

**WIGENTON, United States District Judge**

This matter comes before this Court on the motion of Defendant Craig M. Geisler's ("Geisler") to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (Dkt. No. 10). Plaintiff Vanz, LLC ("Vanz"), opposes this motion. (Dkt. No. 13). No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. After considering the papers submitted in connection with this motion, for the reasons set forth herein, and for good cause shown, this Court **DENIES** Defendant's motion to dismiss for lack of personal jurisdiction.

### I.  BACKGROUND

Plaintiff is a limited liability corporation of the State of Delaware with a principal place of business in Wayne, New Jersey. (Dkt. No. 1, Compl., at ¶ 1). Plaintiff is engaged in the business of purchasing portfolios of non-performing debt. (Id., First Count, at ¶ 1) After purchasing the portfolios, Plaintiff or its attorneys would attempt to collect the debts. (Id.)

Defendant Mattia and Associates, a California Corporation, is in the business of locating and purchasing non-performing debt portfolios which it flips to purchasers, like Plaintiff.  (Id. at ¶ 2). Defendant George Mattia ("Mattia") is the President of Mattia and Associates.  (Id. at ¶ 3). Defendant Geisler is the former Chief Operating Officer of Mattia and Associates.  (Id. at ¶ 4).

The subject matter of this lawsuit involves three transactions between Plaintiff and Defendants between 2011 and 2012.  On October 13, 2011, Plaintiff entered into a contract with Mattia and Associates to purchase 3,932 charged off credit card accounts with a total current balance of $21,442,047.29 (the "Chase Portfolio").  (Id. at ¶ 1).  Plaintiff paid Mattia and Associates $568,238.10 in consideration for the Chase Portfolio.  (Id. at ¶ 2).  On November 7, 2011, Plaintiff purchased another portfolio of non-performing debt, more specifically defaulted auto loans (the "AAG Portfolio"), from Defendant Mattia and Associates for $325,219.18.  (Id., Third Count, at ¶¶ 3-4).  On January 3, 2012, Plaintiff purchased a third portfolio (the "Genco Portfolio") in the face amount of $34,545,697.50 from Mattia and Associates for $518,185.46. (Id., Fourth Count, at ¶ 2).  On March 3, 2013, Plaintiff filed the Complaint in this Court seeking to impose liability on Mattia and Associates, Mattia, and Geisler for knowingly committing acts of fraud to induce Plaintiff to purchase the aforesaid portfolios that caused Plaintiff actual monetary damages and exposed Plaintiff to potential and substantial violations of federal law. (See id.)  On June 3, 2013, Geisler filed a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction.  (Dkt. No. 10).

## II.  PERSONAL JURISDICTION

The Federal Rules of Civil Procedure provide that a district court may exercise personal jurisdiction over a non-resident defendant to the extent permitted under state law.  FED. R. CIV. P.

4(k)(1).  A district court exercising diversity jurisdiction over a case must look to the forum state's long-arm statute in analyzing whether there is personal jurisdiction over a non-resident defendant.  Sunbelt Corp. v. Noble, Denton & Assocs., 5 F.3d 28, 31 (3d Cir. 1993).  New Jersey's long-arm statute permits the exercise of personal jurisdiction "to the fullest limits of due process." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).  The Fourteenth Amendment's Due Process Clause requires that "individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).  Consistent with the Due Process Clause, a court may assert personal jurisdiction so long as the defendant has "certain minimum contacts" with the forum, in this case New Jersey, such as not to "offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457 (1940)).

On a motion under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish jurisdiction. D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) ("Once a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction."); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992).  A court must accept as true the allegations in the complaint and resolve disputed issues of fact in favor of the plaintiff.  Carteret, 954 F.2d at 142 n.1.  However, the plaintiff cannot rely on the pleadings alone and must provide actual proofs. Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).  Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction

would be unreasonable.  Mellon Bank PSFS v. Farino, 960 F.2d 1217, 1226 (3d Cir. 1992).

A court can assert either specific or general jurisdiction over a defendant.  Spuglio v. Cabaret Lounge, 344 F. App'x 724, 725 (3d Cir. 2009).  Specific jurisdiction requires the defendant have minimum contacts with the forum state.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-74 (1985).  In addition, the lawsuit must "arise out of" or "relate to" these minimum contacts.  Id.  Furthermore, the defendant must have purposefully availed itself of the forum such that it "should reasonably anticipate being haled into court" there, having invoked the benefits and protections of the forum's laws.  Id. at 474-75. The Third Circuit has summarized this analysis in three parts: (i) "the defendant must have 'purposefully directed [its] activities' at the forum"; (ii) "the litigation must 'arise out of or relate to' at least one of those activities"; and (iii) "if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" D'Jamoos, 566 F.3d at 102.

General jurisdiction, by contrast, requires the defendant to have "continuous and systematic" contacts with the forum state.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).  These contacts need not relate to the subject matter of the litigation. Id. at 415 n.10.  However, general jurisdiction requires "a very high threshold of business activity."  Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am., 651 F.2d 877, 891 n.2 (3d Cir. 1981) (finding that a "daily presence" in the forum and activities such as weekly advertising, regular solicitation of business, substantial product sales, and the maintenance of a telephone number in the forum meet the threshold); see also Early Learning Res., LLC v. Sebel Furniture Ltd., No. 10-6335, 2011 U.S. Dist. LEXIS 112483 (D.N.J. Sept. 30, 2011).  The facts required to

establish sufficient contacts for general jurisdiction must be "extensive and persuasive." Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982) (citation omitted).   In other words, the plaintiff must demonstrate "significantly more than minimum contacts."  Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987).

## III. ANALYSIS

### A.  Specific Personal Jurisdiction

In response to Defendant's motion to dismiss for lack of personal jurisdiction, Plaintiff alleges that Geisler, as the former Chief Operating Officer of Mattia and Associates, purposefully directed his activities at Plaintiff, a New Jersey resident, and that the instant cause of action arises out of that activity.  Plaintiff contends that Geisler is individually liable for his knowledge and/or personal involvement with the fraud connected to the sale of the three debt portfolios in 2011 and 2012.[1]  Plaintiff alleges that Geisler would frequently contact Plaintiff via e-mail with offers to purchase various portfolios, to negotiate the sale of same, and to present contracts for the sale of same to be executed by Plaintiff.  (Dkt. No. 13-1, Certification of Faith

---

[1] As a general rule, the Court notes that "[i]ndividuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the courts of that state for those acts."  Mark IV Transp. & Logistics, Inc. v. Lightning Logistics, LLC, No. 09-6480, 2012 U.S. Dist. LEXIS 141721, at *17 (D.N.J. Sept. 28, 2012) (quoting Bowers v. NETI Techs, Inc., 690 F. Supp. 349, 357 (E.D. Pa. 1988)).  The Court, however, will waive this rule when a corporate agent commits a tort in his corporate capacity.  Id. (internal citation omitted); see also Payer v. Berrones, No. 12-1704, 2013 U.S. Dist. LEXIS 152130, at *9 (D.N.J. Oct. 23, 2013); Nelligan v. Zaio Corp., No. 10-cv-1408, 2011 U.S. Dist. LEXIS 28628 (D.N.J. Mar. 21, 2011) (noting cases where "jurisdiction seems to exist over an individual defendant who is acting in a 'corporate capacity' if the defendant is personally involved in committing a tort . . . .").  Here, Plaintiff seeks to impose liability on Geisler for his personal involvement in the alleged fraud.  Thus, Geisler can be subject to personal jurisdiction of this Court.

Salviano ("Salviano Cert."), Exs. A-EE).  Plaintiff further claims that several of these e-mails deal specifically with the Chase Portfolio set forth in the First Count of Plaintiff's Complaint.

Geisler, on the other hand, contends that the court lacks jurisdiction over him because his contact with Plaintiff regarding the Chase Portfolio and AAG Portfolio was limited to "telephone conferences and some emails, most of which were directed to George Mattia ("Mattia") the President of Mattia and Associates,  and just 'cc'd' or copied" him. (Dkt. No. 10-1, Certification of Craig M. Geisler ("Geisler Cert."), at ¶ 9).  He alleges that he participated in three to four telephone conferences between Thomas Mesce ("Mesce"), the President of Vanz, and Mattia, and that he only participated to the extent any question was directed to him.  (Id., at ¶ 10). Defendant claims the emails alone do not provide the minimum contacts necessary for this Court to assert jurisdiction over him because he was secondary to any communications between Mattia and Associates and Plaintiff concerning the subject matter of Plaintiff's claims.

Specific jurisdiction is established when a non-resident defendant purposely directs his activities at a resident of the forum, and the injury at issue arises from or is related to those activities.  Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citing Burger King, 471 U.S. at 472).  A court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there."  World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum, and the litigation."  Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984).  "Physical entrance [into the forum] is not required." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007).  However, there must be

at least "a single deliberate contact" with the forum state that relates to the cause of action. Goodman v. Goodman, No. 04–03869, 2009 WL 3756848, at *4 (D.N.J. Nov. 5, 2009) (citing United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F. Supp. 317, 320 (D.N.J.1988).

"Various forms of communications between parties, including written correspondence, telephone calls, and emails, factor into the minimum contacts analysis." Carrabba v. Morgat, No. 2:12-6342, 2014 U.S. Dist. LEXIS 7799, at *13 (D.N.J. Jan. 17, 2014). "[W]hen the plaintiff can proffer evidence of a defendant deliberately directing mail, telephone, and/or email communications to the forum state," then a finding of personal jurisdiction may be proper. Id. (internal citation omitted); Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction")); accord O'Connor, 496 F.3d at 318 (finding that the defendant "deliberately reached into Pennsylvania to target two of its citizens" when it "mailed [plaintiff] a brochure and traded phone calls with them for the purpose of forming an agreement to render spa services"); Gen. Elec., 270 F.3d at 150-51 ("In modern commercial business arrangements, however, communication by electronic facilities, rather than physical presence, is the rule. Where these types of long-term relationships have been established, actual territorial presence becomes less determinative.") (citing Burger King, 471 U.S. at 476)).

In Carteret, the Third Circuit discussed a New Jersey Supreme Court case, Lebel v. Everglades Marina, Inc., 558 A.2d 1252 (N.J. 1989), where the court upheld the exercise of personal jurisdiction over Florida defendant who allegedly committed fraud in the context of a

7

boat sale to a New Jersey resident.  954 F.2d at 147.  In Lebel, the defendant's only transactional contacts with New Jersey consisted of telephone calls and the mailing of the sales agreement to New Jersey.  Id. (citing Lebel, 558 A.2d at 1256) ("Remember that in this case it is alleged that the defendant's representations via mail and telephone to New Jersey were fraudulent")).  Although the court in Lebel described the contacts as "limited", it held that "the defendant purposefully directed his activities to the forum state."  Id.; see also Grand Entm't, 988 F.2d at 482 (explaining that "contract negotiations with forum residents can empower a court to exercise personal jurisdiction over persons outside the forum").

This matter arises out of Mattia and Associates, Mattia, and Geisler's allegedly fraudulent misrepresentations in the context of the sale of three debt portfolios to Plaintiff.  The Complaint is silent as to the alleged contacts between Geisler and New Jersey.  However, according to Plaintiff's Certification in opposition to the motion to dismiss, from 2009 to 2012, Geisler frequently contacted Plaintiff via e-mail with offers to purchase various portfolios, to negotiate the sale of same, and to present contracts for the sale of same to be executed by the Plaintiff. (See Dkt. No. 13-1, Certification of Faith Salviano ("Salviano Cert."), Exs. A-EE).  Several of these emails deal specifically with contract negotiations for the Chase Portfolio and some deal with issues post-sale and even reference the AAG Portfolio deal.  (Dkt. No. 13-1, Salviano Cert., Exs. R, S, BB, CC, DD, EE).  One of the emails even attaches a copy of the Bill of Sale for the Chase Portfolio.   (Id. at Ex. S).   In addition to these emails, Geisler concedes that he "participated in approximately 3-4 telephone conferences between Thomas Mesce ("Mesce") the President of Vanz, LLC and Mattia" and that he "participated to the extent any question was direct to me."  (Dkt. No. 10-1, Geisler Cert., at ¶ 10).  Despite Geisler's lack of physical presence

in New Jersey, the email communications and telephone calls when taken as a whole, demonstrate that Geisler purposefully directed his activities at New Jersey.  The Defendant's conduct and connection with New Jersey are such that he should have reasonably anticipated being haled into court here.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The second step of the personal jurisdiction analysis is to determine if the litigation arises out of or relates to Geisler's activities directed at New Jersey.  "Where the contacts evaluated are those that give rise to the litigation, even one contact with the forum may be enough to justify jurisdiction so long as the other criteria are met."  Grand Entm't, 988 F.2d at 483 (citing Burger King, 471 U.S. at 475 n.18).  Plaintiff's Complaint is premised on Defendant's allegedly fraudulent misrepresentations that induced Plaintiff to purchase three non-performing debt portfolios.  As previously discussed, several of Geisler's emails to Plaintiff as well as several telephone conferences relate directly to several of the portfolios at issue in this case.  Accordingly, the Court finds that this case relates to Geisler's activities directed at New Jersey.

Finally, the Court must determine whether the exercise of jurisdiction is reasonable and comports with the traditional notions of fair play and substantial justice.  D'Jamoos, 566 F.3d at 102.  Once the plaintiff has made out a prima facie case of minimum contacts, as here, "the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  Carteret, 954 F.2d at 150 (quoting Burger King, 471 U.S. at 477).  "The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."  Grand Entm't, 988 F.2d at 483; see also Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 207 (3d Cir. 1998) (noting that if minimum contacts are

present, then jurisdiction will be unreasonable only in "rare cases").  In addressing this question, a court may contemplate "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) (quoting Burger King, 471 U.S. at 477).  "In short, the Court considers whether such factors make the exercise of jurisdiction so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." MPN Software Sys. v. Integrated Practice Solutions, Inc., No. 2:13-3208, 2014 U.S. Dist. LEXIS 1561 (D.N.J. Jan. 6, 2014) (citing Burger King, 471 U.S. at 478)).

Geisler alleges that this Court should decline to exercise jurisdiction because it would be an unreasonable burden on him, as a resident of the State of Florida, to be haled into federal district court in New Jersey based on emails relating to a contract between two corporate entities. Geisler argues that while New Jersey may have an interest in protecting its residents from violations of contractual arrangements, that there is no allegation that Geisler was a party to any such contract.

Defendant, however, misconstrues Plaintiff's allegations.  This is not simply a breach of contract case.  Instead, this is a case that centers on allegations of fraudulent conduct on behalf of Defendants Geisler, Mattia, and Mattia and Associates that induced Plaintiff, a New Jersey entity, to purchase three debt portfolios.  Plaintiff alleges that Geisler is liable for his personal involvement in this fraud.  There can be no question that the State of New Jersey has an interest in protecting its residents from alleged fraudulent activity.  See Miller Yacht Sales, 89 F. Supp. 2d at 568 (finding that defendants did not meet their burden of showing that jurisdiction would

be unreasonable in light of the fact that, <u>inter alia</u>, "New Jersey has an interest in protecting its residents from alleged fraud."). Geisler merely contends that it would be an unreasonable burden for him to litigate in New Jersey because he lives in Florida. The Court finds that, based on Defendant's activities directed at the State, that the Defendant could "reasonably anticipate being haled into court" in the State of New Jersey. Thus, Geisler has not presented a compelling case that litigating in New Jersey would be unreasonable and unfair. Accordingly, the Court finds that he is subject to personal jurisdiction in New Jersey.

### B. General Personal Jurisdiction

Plaintiff explicitly concedes that it "does not allege that Geisler had continuous or systematic contact with New Jersey required for the assertion of general jurisdiction." (Dkt. No. 13, Opp. Br. at 5). Based on the evidence before this Court, this Court agrees that there is no general jurisdiction over Geisler.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for lack of personal jurisdiction (Dkt. No. 10) is **DENIED**.


                                    **<u>s/SUSAN D. WIGENTON, U.S.D.J.</u>**

**Date: March 26, 2014**

cc:          Hon. Madeline Cox Arleo, U.S.M.J.
             Clerk
             All Parties
             File


11